UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:13-CV-00033-R

THOMAS L. BURPO                                                                    **Plaintiff**
v.
NORTHERN TRUST COMPANY and
NEWPAGE CORPORATION                                                           **Defendants**

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant Northern Trust Company's Motion for Summary Judgment (Docket No. 11). Plaintiff has responded (Docket No. 16). Defendants have submitted a Brief Supporting Entry of Judgment Affirming the Plan Administrator's Decision (Docket No. 12). Plaintiff has replied (Docket No. 17). The matter also comes before the Court upon Plaintiff Thomas L. Burpo's Motion for Judgment as a Matter of Law (Docket No. 13), to which Defendants have responded (Docket No. 19). This matter is now ripe for adjudication. For the reasons that follow, judgment is entered for Defendant. Plaintiff's claim is accordingly dismissed.

**BACKGROUND**

Plaintiff Thomas L. Burpo ("Burpo") brings this action against Defendants NewPage Corporation ("NewPage") and Northern Trust Company ("Northern Trust") under the Employee Retirement Income Security Act of 1974, 24 U.S.C. § 1001, *et seq.* ("ERISA"). Burpo, by virtue of his employment at NewPage, was covered under Wickliffe Paper Company's Retirement Plan for Bargaining Hourly Employees, which included long-term disability ("LTD") benefits. He alleges that a variety of health issues, largely stemming from a back injury, prevented him from performing his essential duties at NewPage and caused him to apply for LTD benefits (Docket

1

No. 10-4 at 52-53). Burpo's claim for pension disability was submitted to the Disability Claims Administrator, Sedgwick CMS ("Sedgwick") (Id.).

After navigating the administrative process, Burpo's application was denied because he was deemed not "permanently and totally disabled" under the Plan. He now sues NewPage to recover past and future benefits and attorney's fees. Burpo has also sued Northern Trust Company, a trustee of the Plan. Notably, he has not included the Plan itself in this lawsuit.[1]

## I. Burpo's physical condition and ability to work

### a. Relevant plan terms

The NewPage Retirement Plan provides that a claimant may receive disability pension benefits only if he is "totally and permanently disabled." (Docket No. 10-2 at 25-26.) A claimant will be considered "totally and permanently disabled" for the purposes of the Plan:

> if, and only if, he proves, under the uniform procedures established by the Administrator, that:

(i) *he is disabled by bodily injury or disease so as to be prevented from engaging in any employment*;
(ii) such disability commenced while working for an Employer or Affiliate;
(iii) such disability will be permanent and continuous during the remainder of his life;
(iv) such disability was not contracted, suffered or received while he was engaged in, and did not result from his having engaged in, a felonious criminal enterprise;
(v) such disability was not the result of an intentionally self-inflicted injury; and
(vi) such disability is not one resulting from military service for which he receives disability benefits from the United States Government or any department or agency thereof.

(Docket No. 10-2 at 13) (emphasis added).

---

[1] Defendant argues that the Plan is a necessary party to this suit and that Burpo's failure to name the Plan compels the Court to dismiss this action per Fed. R. Civ. P. 12(b)(7) and in accordance with Fed. R. Civ. P. 19 (Docket No. 12 at 13-14). Because the Court resolves Burpo's lawsuit on other grounds, it need not address this argument.

### b. Burpo's treating physicians and medical records

In weighing Burpo's claim, Sedgwick CMS considered medical records from Dr. David Zetter, Dr. Mark Crawford, and Neurological Associates of Western Kentucky (Docket No. 10-4 at 32-33).

As Burpo's primary care physician, Dr. Zetter saw Burpo mainly for wellness check-ups and medication management (Id., Docket No. 10-5 at 1-36). On October 30, 2009, Dr. Zetter submitted to Sedgwick a form noting that "degenerative disc disease" limited Mr. Burpo's work performance (Docket No. 10-4 at 50-51). Dr. Zetter further indicated that Burpo was fully ambulatory and able to sit, stand, and walk for two hours each, with rest; to lift up to ten pounds; and to engage in occasional bending, stopping, climbing, squatting, reaching above his shoulders, and driving (Id.).

Dr. Zetter referred Burpo to orthopedic surgeon Mark Crawford on May 15, 2008 for consultation regarding pain in his left leg (Docket No. 10-5 at 76). Dr. Crawford noted weakness in Burpo's left quadriceps muscle, absent left knee jerk, and muscle atrophy on the left side of his back (Id.). Dr. Crawford diagnosed Burpo with a herniated disc and degenerative disc disease and recommended two to four weeks of conservative care, instructing Burpo to avoid bending and lifting over ten pounds (Id.). Dr. Crawford excused Burpo from work and instructed him to follow up in one month (Id.). During Burpo's follow-up appointment on June 16, 2008, Dr. Crawford cleared him for a one-month trial return to work (Docket No. 10-5 at 75; Docket No. 10-4 at 91).

Burpo's pre-employment physical led to a neurosurgery consultation with Neurosurgery Associates of Western Kentucky (Docket No. 10-4 at 83-84). At his July 9, 2008 appointment, Burpo complained of back and left leg pain and reported a history of falls, paresthesia, and pain

(Docket No. 10-5 at 51). Physician Assistant Pat Cafferty noted a possible disc herniation and disc space collapse; Cafferty recommended physical therapy and additional studies (Docket No. 10-5 at 51-52). Cafferty further recommended that Burpo remain off work until he began the additional workup and physical therapy (Id.). On August 12, 2008, Cafferty noted that Burpo's condition had improved but cautioned that his progress was insufficient to resume work activities (Docket No. 10-5 at 50). Acknowledging Burpo's ambivalence regarding surgery, Cafferty supplemented Burpo's physical therapy regimen with Neurontin and a steroid injection (Id.). This course of treatment ultimately proved unsuccessful (Docket No. 10-5 at 46-49), and on October 18, 2008, neurosurgeon Dr. Sean McDonald performed back surgery (Docket No. 10-5 at 55-57).

Four months later, on February 26, 2009, Burpo reported to Dr. McDonald that his pain was "virtually gone" and that he was "happy with the results of surgery." (Docket No. 10-5 at 42). On April 20, 2009, Burpo noted persistent but improving issues with his left leg and a new "dull ache" in his right buttock region down to his right knee (Docket No. 10-5 at 41). On June 18, 2009, Burpo complained of new pain in his back, right hip, and right leg; Dr. McDonald recommended that Burpo return to physical therapy (Docket No. 10-5 at 40). By August 26, 2009, Dr. McDonald noted that Burpo experienced no progressive weakness, tolerated increased activities to his satisfaction, and was generally medically stable (Docket No. 10-5 at 38). Instructed to return only as needed (Id.), Burpo did not return for further care.

**c. Sedgwick's independent review**

On September 20, 2009, Burpo applied for LTD benefits (Docket No. 10-4 at 52-53). Upon receiving Burpo's claim for benefits, Sedgwick engaged Dr. Parker Mickle, a neurosurgeon, to review Burpo's records (Docket No. 10-4 at 47-49). Although Dr. Mickle did not confer with

Dr. McDonald, he spoke with Dr. Zetter on December 28, 2009 (Id. at 47). In this conversation, Dr. Zetter explained that he was Burpo's family physician, had not seen Burpo since September 2009, and expressed no opinion about Burpo's ability to work (Id.). After considering Burpo's medical history and prognosis, Dr. Mickle acknowledged Burpo's back, hip, and leg pain but concluded that he was otherwise "stable and doing well." (Id. at 48). Having consulted with Dr. Zetter and reviewed Burpo's medical records, Dr. Mickle determined that Burpo suffered chronic back problems but was not disabled (Id). He reasoned that Burpo's limitations would prevent him from lifting over fifty pounds on a regular basis but would not otherwise restrict his ability to work (Id.). Dr. Mickle submitted his findings to Sedgwick in a reported dated December 28, 2009 (Id. at 47).

### d. Vocational rehabilitation consultant's report

John C. Meyers, vocational rehabilitation consultant, then assessed Burpo's ability to work and identified jobs that were within his educational, vocational, and physical capabilities (Docket No. 10-4 at 42). Meyers considered Dr. Mickle's assessment as well as Burpo's educational background and vocational history (Id. at 42-45). He ultimately characterized Burpo's work capacity as "very broad" and opined that Burpo, who holds a high school degree and has over fifteen years of experience as an Assistant Crew Leader, could perform "many different occupational alternatives." (Id. at 44.) Specifically, Meyers suggested that Burpo's capacity allowed him to work as an injection mold machine tender, fiberglass fabricator, team assembler, small parts assembler, warehouse worker, or delivery driver (Id.). Based on data from the Kentucky Workforce Office of Employment and Training, Meyers concluded that such jobs existed within twenty-five miles of Burpo's home in Carlisle County, Kentucky (Id.).

## II. Sedgwick's denial of benefits and Burpo's subsequent appeal

Based on this information, Sedgwick determined that Burpo was not totally and permanently disabled within the Plan's requirements and denied his claim in a letter dated February 22, 2010 (Docket No. 10-4 at 32-34). The letter acknowledged the Plan's relevant provisions, explained the basis of Sedgwick's denial, and advised Burpo of his right to administratively appeal Sedgwick's decision (Id.). Specifically, the letter warned that failure to submit a written request for appeal within 180 days after the denial—i.e., by August 19, 2010—would result in the preclusion of both the administrative process and judicial process (Id. at 34).

Burpo timely challenged the denial by filing an appeal on May 14, 2010 (see Docket No. 10-4 at 2). He submitted physical therapy records in support of this challenge (Id. at 81-141). These records, spanning sessions from January 12, 2009 to August 24, 2009, note that Burpo suffered from obesity, chronic degenerative disc disease, and back pain. They discuss his alternating pain in the left shoulder, back, and legs and mention several episodes of falling that Burpo attributed to left leg weakness (Id).

Sedgwick forwarded the additional records to Dr. Mickle (Docket No. 10-4 at 29-31). Dr. Mickle declined to revise his initial assessment, maintaining that Burpo's condition was stable and that the initial fifty-pound work restriction remained appropriate (Id.). Although the Plan documents indicate that the Plan Administrator, i.e., the Benefit Plans Administration Committee (BPCA), will review claim appeals (see Docket No. 10-1 at 20-21; Docket No. 10-2 at 48), Sedgwick itself erroneously reviewed and subsequently denied Burpo's appeal by a letter dated October 8, 2010 (Docket No. 10-4 at 26-28). Sedgwick again discussed the Plan's relevant provisions, explained the basis of its denial, and advised Burpo of his right to bring a civil action under ERISA should he wish to further contest the denial (Id.).

The Plan documents do not permit a claimant to submit additional documents for a second appeal (see Docket No. 10-1 at 19-20). Nonetheless, Burpo submitted a second appeal by way of a letter from his attorney dated May 10, 2012. He enclosed an August 8, 2009 Notice of Award of disability benefits from the Social Security Administration; a November 10, 2010 work excuse from Nurse Practitioner Kemp Smith; and a November 18, 2010 letter from Dr. Zetter (Id. at 13-20). NewPage denied Burpo's second appeal in a July 17, 2012 letter, explaining that the appeal was time-barred, having been filed more than 180 days after the claim's denial (Docket No. 10-4 at 1).

Following this denial, Burpo filed this civil suit in Kentucky state court, and the Defendants removed the action to this forum. Burpo seeks judicial review of the benefit denial pursuant to Section 502(a)(1)(B) of ERISA, which entitles a plan participant or beneficiary to bring a civil action "to recover the benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

## STANDARD

Generally, courts "review a plan administrator's denial of ERISA benefits de novo." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 163 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a

deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

The NewPage Plan vests the Administrator with significant discretion. The Plan document provides:

> The Administrator has the authority to make final decision with respect to paying claims under the plan.
>
> In making a final decision, the Administrator has *sole, absolute and discretionary authority* in interpreting the meaning of Plan provisions and in determining all questions arising under the Plan, including, but not limited to, eligibility for benefits. The Administrator's decision *shall be final and binding* on participants and all other parties *to the maximum extent allowed by law*.

(Docket No. 10-1 at 19 (emphasis added)).

In addition, the documents provide that "[a]ny interpretations related to facts or provisions of the Plan will be made by the Administrator, in its complete and exclusive discretion, and will be binding and conclusive." (Docket No. 10-1 at 21.) Furthermore, the Plan documents expressly state that "[d]ecisions of the Administrator shall be subject to court review only to determine whether such decisions of the Administrator are an abuse of the Administrator's discretion hereunder." (Docket No. 10-2 at 43.)

Such terms require the Court to analyze the case at bar according to the arbitrary and capricious standard. *See, e.g.*, *Gravelle v. Bank One Corp.*, 333 Fed. Appx. 955, 959-60 (holding that plan language vesting the administrator with "the full power and authority . . . [t]o determine, in its sole discretion, all questions concerning the construction and interpretation of the Plan and its administration" was sufficient to afford the plan administrator discretion and subject its decision to the arbitrary and capricious standard of review). Although Sedgwick erroneously reviewed the first appeal rather than forwarding it to BPAC, the arbitrary and

capricious standard applies even in the absence of a decision on the merits by the plan administrator. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) (holding that the plan administrator's failure to render a timely decision did not alter the standard of review, which is the same whether the appeal is actually denied or is deemed denied); *Van Winkle v. Life Ins. Co. of North America*, 2013 WL 1914514 (E.D. Ky., May 8, 2013). Accordingly, the Administrator's denial will be overturned only if the Court determines that the Administrator acted arbitrarily and capriciously in making its decision.

Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id*. Without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence - no matter how obscure or untrustworthy - to support a denial of a claim for ERISA benefits." *Id*.

The standard of review may be affected by inherent conflict of interests, such as when a plan administrator both determines and pays for benefits. A court must consider this potential conflict of interest, but only as one factor in its analysis. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir.2007). Such conflicts do not change the standard of review. *Glenn*, 554 U.S. at 116-17.

## DISCUSSION

**I. Because Northern Trust Company does not control administration of the Plan, it cannot be liable for the denial of benefits to Plaintiff and is not a proper party to this litigation.**

Defendant Northern Trust Company is not a proper party in this case. "[I]n the Sixth Circuit, the proper party defendant in an ERISA action concerning benefits is the party that is shown to control administration of the plan." *Geiger v. Unum Life Insurance Co.*, 213 F. Supp. 2d 813, 818 (N.D. Ohio 2002). *See also Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1997) (holding that unless a party "is shown to control administration of a plan, it is not a proper party defendant in an action concerning [ERISA] benefits"); *Libbey-Owens Ford Co. v. Blue Cross and Blue Shield*, 982 F.2d 1031, 1035 (6th Cir. 1993), *Calvert v. Firstar Finance, Inc.*, 266 F. Supp. 2d 578, 586 (W.D. Ky. 2003). "[A] person is a fiduciary with respect to a plan to the extent that he exercises any discretionary authority or discretionary responsibility in the administration of the plan." *Id.*

In this case, Burpo fails to allege or demonstrate that Northern Trust Company played any part in either administrating the plan or in denying Plaintiff's claim for benefits. The Administrative Record indicates that disability claims under the Plan are first brought before Sedgwick CMS (the Disability Claims Administrator) and then appealed to NewPage Corporation (the Plan Administrator).[2] These parties were responsible for "administering and interpreting" the plan. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). Northern Trust Company, as trustee of the Plan, held and managed the Plan's assets but lacked authority over benefit determinations or Plan interpretation (see Docket No.10-1 at 24).

---

[2] See Administrative Record, Docket No. 10-1, at 19-22:

"If a claim for benefits is conditioned upon a determination of whether the claimant is totally and permanently disabled, the follow procedures will apply:

*Initial Disability Claims*

All claims for benefits under the Plan that are conditioned upon a finding of total and permanent disability must be in writing, on the form available from the NewPage Employee Service Center. Claims must be submitted to the Disability Claims Administrator, appointed by the Administrator . . . Sedgwick CMS . . . . If the Disability Claims Administrator determines that the claimant is not disabled, the claimant will have 180 days from receipt of the initial decision… to request that the Plan Administrator conducts a full and fair review of the determination. The request (a first appeal) must be filed with the Disability Claims Administrator."

Because Northern Trust Company did not "control administration" of the Plan, it is an improper party. Therefore, its Motion for Summary Judgment (Docket No. 11) is GRANTED, and Northern Trust Company is dismissed as a party to this lawsuit.

**II.       Because the documents that Burpo submitted in support of his second appeal were not before the Plan Administrator during the administrative review, they cannot be considered in support of his claim.**

The Plan documents establish the Disability Appeals process that a claimant may initiate if the Disability Claims Administrator determines that the claimant is not disabled (Docket No. 10-1 at 20-21). Within 180 days of receipt of the denial, a claimant may initiate an appeal with the Disability Claims Administrator to request that the Plan Administrator conduct a "full and fair review." (Id. at 20.) This process allows a claimant to submit information relating to the claim, including written comments, documents, and records (Id.). Should the Plan Administrator affirm the Disability Claims Administrator's denial following a second review, the claimant may bring a civil action under ERISA (Id. at 21).

The Plan documents do not allow a claimant to submit additional evidence upon the conclusion of the administrative review process (See Id.). As the Plan documents explain, upon Sedgwick's denial of his appeal, Burpo's exclusive recourse was judicial review. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (explaining that when a claim is denied on review, a claimant's appropriate recourse is to seek judicial review by the district court).

Because the submission of additional evidence was not contemplated in the Plan documents, the Court may not consider the evidence that Burpo submitted in support of his "second appeal." *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) ("Our review [of a benefits determination] is confined to the administrative record as it existed . . . when [the plan administrator] issued its final decision. . . . ."); *Wilkins v. Baptist Healthcare System, Inc.*, 150

F.3d 609, 615 (noting that the district court was "confined to the record that was before the Plan Administrator" and declining to consider an affidavit made after the administrator's appeal denial). Consequently, because they were not before the Plan Administrator, the Court affords no weight to Nurse Practitioner Kemp Smith's November 10, 2010 work excuse (Docket No. 10-4 at 14), Dr. Zetter's November 18, 2010 letter (Id. at 13), or the Social Security Administration's August 8, 2009 Notice of Award (Id. at 15-20).

**III.     The Plan Administrator's denial of Burpo's claim was not arbitrary and capricious.**

Because the arbitrary and capricious standard applies to the Administrator's decision, it will be upheld "'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted). Under this standard, "the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions,'" *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000), but the Court may not substitute its own judgment for that of the plan administrator. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

To be successful, Burpo must establish that the Administrator's determination that his condition did not "prevent [him] from engaging in any employment" was irrational in light of the plan's provisions. (See id.)[3] The Administrative Record demonstrates, however, that the

---

[3] As Defendants acknowledge, Sedgwick apparently employed the definition of "totally and permanently disabled" applicable to employees of the Chillicothe Paper Company, Escanaba Paper Company, and Rumford Paper Company rather than the definition applicable to the Wickliffe Paper Company's employees. (*See* Docket No. 10-2 at 12-13.) This error does not require the Court to overturn the denial of benefits. *See Judge v. Metropolitan Life Ins. Co.*, 710 F.3d 651, 658-59 (holding that where the plan's reason for denying the plaintiff's claim for benefits was consistent throughout the administrative review process, its recitation of the wrong standard was "merely a harmless error" and did not merit a reversal); *see also Kent v. United of Omaha Life Ins. Co.*, 96. F3d 803, 807 ("Generally, the courts have recognized in E.R.I.S.A. cases that procedural violations entail substantive remedies only when some useful purpose would be served.").

Administrator's denial was grounded in rational consideration and was supported by substantial evidence. Burpo's condition improved considerably following his 2008 surgery; four months after the procedure, he reported decreased pain, increased strength, and satisfaction with the surgery's results (Docket No. 10-5 at 24). Although some symptoms persisted, Burpo had no focal weakness, had normal reflexes, and tolerated increased activities to his satisfaction by August 26, 2009 (Docket No. 10-5 at 38). Furthermore, Burpo sought no additional neurosurgical care after Dr. McDonald discharged him. While he apparently experienced some falling episodes, the Administrative Record does not indicate that Burpo sought medical care for those falls.

The Administrator was entitled to rely upon Dr. Mickle's expert opinion and was not required to defer to Dr. Zetter's assessment of Burpo's ability to work. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (holding that ERISA does not require administrators to accord special deference to the opinions of treating physicians). A file review of a benefits decision is not inherently objectionable if performed by a qualified medical professional. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Where the administrator foregoes a physical examination, questions can exist about the accuracy of the benefits decision. *Bell v. Ameritech Sickness & Acc. Disability Ben. Plan*, 399 F. App'x 991, 1000 (6th Cir. 2010) (citing *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009)). Benefits determinations may be arbitrary and capricious when they make credibility

---

Defendants further note that the definition that Sedgwick employed was, in fact, broader than that actually applicable to Burpo. (*See* Docket No. 10-2 at 12-13, § 1.2.46(a) and § 1.2.46(b).) The definition employed by Sedgwick would find disability where, "because of demonstrable injury or disease, the Participant will permanently, continuously and wholly be prevented from ever performing any work for profit or remuneration for which he is reasonably qualified by his education, training or experience." (Id. at 1.2.46(a).) The actually applicable definition, however, would find disability only where the claimant "is disabled by bodily injury or disease so as to be prevented from engaging in any employment." (Id. at 1.2.46(b).) Accordingly, Sedgwick reached its decision that Burpo was not totally and permanently disabled based on a broader definition of the term than that employed by the Plan documents.

determinations without the aid of a physical exam. *Id.* But here, Dr. Mickle neither ignored the treating physicians' diagnoses nor made credibility determinations about Burpo's symptoms. Instead, his report notes that he reviewed Burpo's medical records and, after speaking with Dr. Zetter, determined that Burpo was able to work subject to a lifting restriction (Docket No. 10-4 at 30-31). The benefits decision was not meaningfully impacted by the choice to conduct a file review.

In addition, vocational rehabilitation expert John Meyers concluded that Burpo's educational background, vocational history, and physical capability would afford him a "very broad" work capacity, even in light of Dr. Mickle's restriction; Meyers opined that Burpo could perform sedentary, light, and medium work, as well as a wide range of jobs requiring heavy work (Docket No. 10-4 at 42-45).

Upon reviewing the Administrative Record, the Court is satisfied that the Plan Administrator's decision that Burpo was not wholly unable to engage in "any employment" was the result of a deliberate, principled reasoning process and was supported by substantial evidence. Accordingly, the Plan Administrator did not act in an arbitrary and capricious manner in reaching its benefits decision.

### IV. Plaintiff's claim for breach of fiduciary duty is dismissed.

ERISA establishes a "prudent man" standard for fiduciaries, requiring them to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a). Burpo has presented no evidence that NewPage did not fulfill its obligations as a fiduciary. As discussed above, the Plan was administered by Sedgwick, and ample evidence supports Sedgwick's decision to deny Burpo's benefits. Because no evidence suggests that any party breached a fiduciary duty to Burpo, this claim must be dismissed.

## CONCLUSION

Therefore, having considered the Administrative Record and the parties' respective arguments, the Court will affirm the Plan Administrator's decision.  Therefore, Defendant Northern Trust Company's Motion for Summary Judgment (Docket No. 11) is GRANTED, and Plaintiff's Motion for Judgment as a Matter of Law (Docket No. 13) is DENIED.  No attorney's fees will be granted.  An appropriate Order will issue separately with this Opinion.